

| | |
|---|---|
| DMP/ICR/NCG | *271 Cadman Plaza East* |
| F. #2020R00785 | *Brooklyn, New York 11201* |

March 31, 2023

By ECF

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  United States v. Mohammad David Hashimi, et al.
>      Criminal Docket No. 22-553 (ENV)

Dear Judge Vitaliano:

For the reasons below, and with the consent of counsel for defendants Mohammad David Hashimi, Seema Rahman, and Abdullah At Taqi,[1] the government respectfully moves under Federal Rule of Criminal Procedure 16(d)(1) for the entry of the proposed Protective Order attached to this motion, which imposes restrictions on the use and dissemination of materials and information disclosed by the government to the defendants pursuant to the government's obligations under Rule 16, 18 U.S.C. § 3500, Rule 26.2 of the Federal Rules of Criminal Procedure and pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

I.   Background

A.  The Charged Conduct

As detailed in the complaint (ECF No. 1), the government's detention memorandum (ECF No. 4), and in the indictment (ECF No. 3), the defendants are charged with conspiring and attempting to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), for their participation in a scheme to provide money, including cryptocurrency, to the foreign terrorist organization the Islamic State of Iraq and al-Sham ("ISIS"). Among other things, the allegations in the complaint detail information obtained by the

---

[1]   Defendant Khalilullah Yousuf was arrested in Canada by Canadian law enforcement, is not yet in U.S. law enforcement custody and has not yet been arraigned on the indictment.

government from confidential human sources of information, financial records, and electronic communications between the members of the conspiracy.

B. The Discovery

As part of its investigation, the government has obtained communications and records from third parties and government agencies, collected records and other information through interviews, physical surveillance and inspections, served search warrants on electronic communications service providers, and executed search warrants on physical premises, resulting in the seizure of voluminous records relevant to the above-captioned case. The government anticipates that its discovery will include several broad categories of materials which implicate different sensitivities and interests:

- Financial records of the defendants and numerous third parties, including the charged defendants and uncharged witnesses and other third parties;

- Personal communications and financial records of certain charged defendants and uncharged third parties;

- U.S. government records relating to the defendants and uncharged third parties; and

- Law enforcement records relating to the government's efforts to investigate the defendants' activities, including records disclosing the investigative techniques employed.

These broad categories of discovery implicate a number of different interests that should be protected, including the privacy interests of the defendants' and uncharged third parties, and the need to protect law enforcement investigative techniques that were used to detect the charged conduct, and that, if widely disclosed, could compromise their utility in future investigations. Notably, the charges in this case result from an investigation that implicates the national security interests of the United States.

II.    Legal Standard

This Court has the authority under Federal Rule of Criminal Procedure 16(d) to issue a protective order restricting the dissemination of discovery for good cause. See Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); United States v. Al-Farekh, 956 F.3d 99, 106-07 (2d Cir. 2020) (noting "district courts' power under [Rule 16(d)] to issue protective orders denying or restricting discovery for good cause"); In re: Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008) (noting that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"); United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) (noting that "the Supreme Court has held that the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of materials which they may be entitled to inspect"). "Good cause" as contemplated by Rule 16 includes the protection of information

important to the national security, law enforcement and innocent third parties.  See, e.g., United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008) (discussing national security interests); Smith, 985 F. Supp. 2d at 524, 531 (discussing third party and law enforcement interests); Fed. R. Crim. P. 16 advisory committee note (1974) ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed.").

By its own terms, Rule 16 contemplates that discovery materials should be exchanged privately between the parties and not disclosed publicly.  See Seattle Times Company v. Rhinehart, 467 U.S. 20, 31-33 (1984) (noting that pretrial civil discovery materials are not traditionally available to the public); United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (holding the same in the context of criminal discovery); Smith, 985 F. Supp. 2d at 519 (noting that pretrial discovery "is usually conducted in private").  Because the purpose of pretrial discovery is solely to prepare a defense, discovery materials provided by one party or another should not be disseminated before trial to members of the public.  See Anderson, 799 F.2d at 1441 ("Discovery, whether civil or criminal, is essentially a private process because the litigants and courts assume that the sole purpose of discovery is to assist trial preparation.  That is why parties regularly agree, and courts often order, that discovery information will remain private."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

For these reasons, courts in this Circuit and others have held that it is appropriate to issue a protective order limiting the dissemination of discovery materials solely to the defendants for their use in preparing a defense for trial.  See, e.g., Seattle Times, 467 U.S. at 37 (affirming protective order limiting dissemination of pretrial discovery); Stewart, 590 F.3d at 98-99 (same); Anderson, 799 F.2d at 1441 (same); Smith, 985 F. Supp. 2d at 535 (same); United States v. Salemme, 978 F. Supp. 386, 389-90 (D. Mass. 1997) (same).

III.     The Proposed Protective Order

The proposed Protective Order (the "Protective Order") balances the varied privacy and security interests of the government and of uncharged third parties, including potential witnesses, against the defendants' need to investigate the charges against them and to prepare a defense, by restricting the disclosure of discovery to individuals with a specific need to review the discovery to assist the defendants in defending against the charges.  The Protective Order permits defense counsel to share discovery materials with defense staff, including expert witnesses, investigators, and interpreters, and with potential witnesses to prepare them for testimony, and establishes a process for defense counsel to obtain authorization, either from the government or the Court, to share discovery with others if there is a need to do so.

At the same time, the Protective Order requires defense counsel to ensure that each person to whom they provide discovery material is advised of the terms of the Protective Order and agrees to be bound by them, and takes care to safeguard the discovery material that is disclosed to them.  The Protective Order also balances the defendants' needs to protect defense strategy with the government's need to ensure accountability for the handling of discovery material by requiring defense counsel to ensure Attachment A to the Protective Order is signed and dated by the

authorized recipients to whom defense counsel discloses discovery material. The Protective Order requires defense counsel to return or destroy the discovery material when the defendants conclude all efforts to defend against the charges in the case and any superseding indictment.

Finally, the Protective Order allows the government to designate particularly sensitive discovery material as "Sensitive Discovery Material," subject to greater restrictions on its use and dissemination. The Protective Order permits defense counsel to challenge these designations with the government and provides that the government may establish good cause as to why material should be treated as Sensitive Discovery Material if defense counsel disagrees with the government's representations.

The government has provided draft copies of the Protective Order to defense counsel of record for each defendant currently present in the United States and who has been arraigned by the Court, and has requested their comments and views on the Protective Order. Counsel for each of the individual defendants have indicated that they consent to the entry of the Protective Order.

IV.     Conclusion

Given the sensitive nature of the discovery in this case, the volume of discovery, and the harm to the defendants, third parties, and to the government's law enforcement and national security interests that would result from its disclosure to those without a legitimate need to review the discovery, the government respectfully requests that the Court enter the Protective Order.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     ___/s/_____
Douglas M. Pravda
Ian C. Richardson
Nina C. Gupta
Assistant U.S. Attorneys
(718) 254-6268/6299/6257

Enclosure (Proposed Protective Order)

cc:         Defense Counsel of Record (by ECF)
            Clerk of Court (ENV) (by ECF)